IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,    )
                             )
                 Plaintiff,  )    Criminal Case No. 06-498-KI
                             )
        vs.                  )    OPINION AND ORDER
                             )
TURON LAMONT WALKER,         )
                             )
                 Defendant.  )
_____ )

Karin J. Immergut
United States Attorney
District of Oregon
Stephen F. Peifer
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

        Attorneys for Plaintiff

Barry W. Engle
Engle & Giles, P.C.
4614 S.W. Kelly Avenue, Suite 201
Portland, Oregon  97239

        Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Defendant Turon Lamont Walker is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He moves to suppress the firearm and other evidence seized on October 19, 2006 pursuant to a search warrant. Walker contends that he is entitled to a *Franks* hearing to determine if the warrant affidavit contains false statements or omissions that affect the existence of probable cause. He alternatively argues that the information in the warrant is stale. Before the court is Defendant's Motion to Suppress and Motion for *Franks* Hearing (#14). For the reasons below, I deny the motion.

## FACTS

Detective Lori Goodwin investigated the shooting of Michael Johnson and Clayton Cox. The men were shot on September 17, 2006 at 2:13 AM while walking down the street near SW 4th Avenue and SW Washington Street in downtown Portland. A witness, Terry Robinson, approached officers on the night of the shooting and gave them the license plate of a black Chevy Avalanche that he believed was occupied by the shooting suspects. Robinson was in a car parked next to the Avalanche on the second floor of a city Smart Park garage. He heard the men in the Avalanche talking about getting "straps" from the car, which Robinson knew referred to guns. Robinson heard gunshots about 60 seconds after the men walked down the exit stairway. He then saw the same four men run back to the Avalanche, get inside, and drive down the ramp behind the car in which Robinson was a passenger. Goodwin interviewed Robinson on October 13, 2006. The warrant was approved on October 19, 2006.

**DISCUSSION**

I.    Request for a Franks Hearing

Walker contends that four pieces of information were omitted from the warrant, either intentionally or with reckless disregard for the truth. According to Walker, the information was material to a determination of probable cause because the information casts doubt on the reliability of the witnesses upon whom probable cause relied. Walker thus contends that he has made the preliminary showing entitling him to a *Franks* hearing so that the Court can determine if the supplemented affidavit was sufficient to support the search warrant. The four omissions are: (1) Robinson's statement that he could not identify the suspect from a photograph; (2) an implication that information was based on statements of Corning, a woman with Robinson the night of the shooting; (3) errors in the description of the garage lay out; and (4) failure to include information on Robinson's pending felony.

The government contends that Walker has made an inadequate showing for a *Franks* hearing.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing in which he can attack the veracity of a search warrant affidavit or challenge the omission of material facts in the affidavit. In order to merit a *Franks* hearing, a defendant contesting an affidavit's veracity "must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." United States v. Hay, 231 F.3d 630, 638 n.8 (9th Cir. 2000), cert. denied, 534 U.S. 858 (2001). A similar showing is required where a defendant points to material omissions: (1) the defendant must make a substantial preliminary showing that the affidavit

Page 3 - OPINION AND ORDER

contained a deliberate or reckless omission of facts that tend to mislead; and (2) the defendant

must demonstrate that the affidavit supplemented with the omissions would be insufficient to

establish probable cause.  United States v. Collins, 61 F.3d 1379, 1383 (9th Cir.), cert. denied,

516 U.S. 1000 (1995).  "[M]isstatements resulting from negligence or good faith mistakes will

not invalidate an affidavit which on its face establishes probable cause."  United States v.

Hammett, 236 F.3d 1054, 1058 (9th Cir.), cert. denied, 534 U.S. 836 (2001).

More specifically, five requirements must be satisfied before a defendant is entitled to a

hearing under Franks:

> (1) the defendant must allege specifically which portions of the warrant
> affidavit are claimed to be false; (2) the defendant must contend that the false
> statements or omissions were deliberately or recklessly made; (3) a detailed offer
> of proof, including affidavits, must accompany the allegations; (4) the veracity of
> only the affiant must be challenged; and (5) the challenged statements must be
> necessary to find probable cause.

United States v. Perdomo, 800 F.2d 916, 920 (9th Cir. 1986).  The effect of the

misrepresentations and omissions on the existence of probable cause is considered cumulatively.

United States v. Stanert, 762 F.2d 775, 782 (9th Cir.), amended on other grounds, 769 F.2d 1410

(9th Cir. 1985).  If, after a hearing, the defendant establishes by a preponderance of the evidence,

that the false statements or omissions were intentional or reckless, and the remaining material in

the affidavit is insufficient to support a finding of probable cause, the search warrant is

invalidated and the evidence suppressed.  Franks, 438 U.S. at 156.

"Probable cause exists when, under the totality of the circumstances, there is a 'fair

probability that contraband or evidence of a crime will be found in a particular place.'"  United

States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238,

103 S. Ct. 2317 (1983)).

Page 4 - OPINION AND ORDER

A.    <u>Robinson's Inability to Identify a Photograph of the Suspect</u>

Walker notes that Robinson gave a general description of the person that he saw which the police used to support probable cause for the search of Walker's house.  Robinson also told the police that he could not identify the suspect from a photograph.  Walker contends that Robinson's inability to identify a photograph was either intentionally or recklessly omitted from the affidavit even though it is material in the magistrate's determination of Robinson's reliability.

The government contends that because Robinson stated that he could not pick out the suspects in a photo line-up, there was no point in having him try.  The government argues that the additional information does not demonstrate falsity of any kind and does not detract from probable cause.

In the affidavit, Goodwin stated:

> Robinson described who he believed to be the front seat passenger as 20-30 years of age, light complected black male, thinner and taller than the driver[,] similar in height to Robinson.  Robinson gave me his height as 6'3".  Robinson said the passenger wore a long white plain tee shirt which he remembered because he wore tee shirts in similar length.

Def. Ex. A at 3-4.  Robinson also saw the taller, thinner male in the white tee shirt put a handgun in his waistband prior to walking down the stairway to leave the garage.

Goodwin also spoke to Officer Stradley, who had stopped the Avalanche on October 6, 2006.  Stradley recognized the driver of the Avalanche, Walker, from previous contacts.  Stradley described Walker as tall, about 6'3", thin, and light complected.  During the traffic stop, Walker refused to give consent to search his car.  He was wearing a white tee shirt during the stop.  Stradley also informed Goodwin that Walker often wears white or red tee shirts, long past his waist.  Goodwin summarized the description information in the affidavit as: "I know that both

Officer Stradley's and witness Robinson's description of the passenger with the handgun is consistent with the person of Walker." Id. at 5.

Goodwin further states in the affidavit that DMV records identify the Avalanche as registered to Walker and Kimberly Lindsey. Goodwin also noted in the affidavit that her criminal history check of Walker showed him to be 35 years old, 6'3", 185 pounds, and a convicted felon. Walker did not state in the affidavit that Robinson told her he could not pick out the suspects in a photo line-up.

I would have preferred for Goodwin to state in the affidavit that Robinson said he was unable to pick the suspect out of a photo line-up. I agree with the government, however, that although Robinson's statement would inform the magistrate about how closely Robinson saw the suspect's face, it does not provide any information about Robinson's veracity. Furthermore, any limitation on Robinson's knowledge is balanced by his accurate description of Walker's height, complexion, and tee shirt preference. In addition, Robinson's description was corroborated by the DMV records on the Avalanche, Walker's physical description in his criminal history, and Stradley's description of Walker. In sum, with the details from Robinson corroborated by three other sources, the affidavit would still provide probable cause, even when supplemented with information that Robinson could not identify the suspect in a photo line-up.

B.   Corning's Role

Walker argues the affidavit implies that some of the information came from Corning's statements, even though she was not interviewed until after the warrant was served.

The government notes that the detective made numerous attempts to contact Corning but was not successful in meeting her for an interview. The government disputes Walker's

interpretation of the affidavit, and instead contends that the affidavit is clear that all information came from Robinson.

I agree with the government that nothing in the affidavit implies that any of the information came from Corning instead of Robinson. Corning is not even named in the affidavit. Goodwin does state that Robinson said he was in the passenger seat of his car in the Smart Park, implying that another person was driving, and that he and his passengers were stopped by police at the toll gate of the Smart Park. But nothing implies that any of the information about the Avalanche and the suspects in it came from Corning. If information from Corning is unnecessary to support the probable cause determination, the lack of mention of Corning in the affidavit is neither misleading nor a reckless omission of facts.

C.    Incorrect Description of the Smart Park

Walker notes that the Smart Park garage is laid out differently than Robinson states because the Smart Park is on SW Alder rather than on SW Washington and has no exit on SW Washington, the place where Robinson told the police the men exited. Thus, Walker argues that even though Robinson's statement about where the men exited could not have been true, the affidavit recklessly disregarded the falsity and did not point out the discrepancy.

The government concedes that Goodwin initially erred in her description of the parking garage when she stated in the affidavit that Robinson saw black males walk down the stairway that led out toward SW Washington and 4th Avenue. Goodwin was referring to her October 18, 2006 report. In Goodwin's October 24, 2006 report, Goodwin made a correction: "I mistakenly referred to this as SW Washington and 4th Avenue. My report dated 10-18-06 (page 3, 4th paragraph) should have read SW Alder at 4th Avenue, which is the exit closest to the City Club."

Def. Ex. B. The government contends that if the error is corrected in the warrant affidavit, the probable cause finding is unaffected in light of all the other details provided by Robinson.

It is unclear how Robinson identified the exit for Goodwin, that is, whether the mistake was his or hers. The inside of a multi-story parking garage is a place where many people lose their bearings, particularly after ascending the ramp above the first floor. It would not be a surprise if a witness's description was off by one street. Goodwin's interview with Robinson took place on October 13, a few weeks after the shooting. This could also explain the confusion. It is also possible that Robinson identified the exit more generally and Goodwin erred when trying to specify where the stairway led. If that is the case, an innocent mistake on the part of Goodwin does not entitle Robinson to a *Franks* hearing.

Even if the mistake was Robinson's and Goodwin noted this in the affidavit, the magistrate would have the information that Robinson heard the discussion about guns, saw one man put a gun in his waistband, saw the group head down the stairway to leave, heard gunshots 60 seconds later, and saw the group run back to the car to drive out of the Smart Park. The affidavit also explains that the police targeted the Smart Park immediately after the shooting and blocked the exits. With these details, the affidavit would still provide probable cause, even if supplemented with the fact that Robinson stated the street incorrectly when describing the Smart Park's stairway.

D.    Robinson's Pending Felony

Walker contends that the affidavit should have noted that Robinson had a pending felony in Washington County for unauthorized use of a vehicle. Walker argues that the magistrate needed this information to evaluate whether Robinson was trying to curry police favor with an untrue statement to the police.

Page 8 - OPINION AND ORDER

The government acknowledges that law enforcement officers generally disclose information on ulterior motives in search warrant affidavits, assuming the officer knows the information. Here, the government argues there is no evidence that either Goodwin or the original reporting officer was aware of Robinson's pending case in another county.

Walker makes no showing that any of the officers knew of Robinson's pending case. Speculation of the knowledge is inadequate to show entitlement to a *Franks* hearing. See United States v. Meling, 47 F.3d 1546, 1554 (9th Cir.) ("For whatever reason, this information [of a recent conviction and history of mental illness] was not contained in the FBI's rap sheet. Defendant disbelieves the FBI, but that disbelief does not amount to the substantial showing required under *Franks*."), cert. denied, 518 U.S. 843 (1995); United States v. Miller, 753 F.2d 1475, 1478 (9th Cir. 1985) ("It might have been prudent for the federal agents to check on [an informant's] background and criminal record, but their failure to do so is not reckless disregard."). Walker contends that not looking is the equivalent of a reckless omission because a quick search of OJIN (Oregon Judicial Information Network) would have shown Robinson's pending charge. Based on Miller, in which the officer did not check, I do not accept Robinson's statement of the law. At most, Goodwin was negligent in not searching for Robinson's criminal history. Consequently, Walker is not entitled to a *Franks* hearing on this basis.

E.    Summary

I also considered the cumulative effect of supplementing the affidavit concerning the issues raised by Walker. I conclude that a supplemented affidavit still establishes probable cause to search Walker's house and his cars.

II.    Staleness of the Warrant Affidavit

The shooting occurred on September 17, 2006 and the search warrant was issued on October 19, 2006, 32 days later.

Walker contends that the affidavit was based on stale information and so could not support probable cause for a search 32 days later. Because this was likely a one-time argument between patrons of a night club, Walker argues that the shooting was an act of anger and not a criminal enterprise. He claims that there was no information that any of the men seen in the Smart Park had any association with the Avalanche other than on the date of the shooting, September 17, and no information that any of the men would have kept the guns in the vehicle they were driving for one night, rather than on their persons. Walker argues, without a declaration in support, that it is logical for a person to dispose of a firearm he used in a shooting. In summary, Walker contends that the affidavit contains no reliable information to explain why a gun seen with a person in a garage would be in the vehicle a month later, in part because the affidavit does not suggest that the owner of the car is the person with the gun. Walker also disputes whether probable cause existed to search his other car, a Monte Carlo which was not seen at the shooting.

The government contends that there are no cases declaring staleness for a 32-day delay in a firearms/shooting case such as this. Even if the "smart thing" for a defendant to do would be to get rid of evidence, the government contends that offenders historically fail to do so. Moreover, the government contends that offenders keep firearms for personal protection as well as for criminal activity. The government also argues that a magistrate can reasonably rely on the opinion of experienced law enforcement officers about where evidence of a crime is likely to be found.

Page 10 - OPINION AND ORDER

> An affidavit must be based on facts so closely related to the time of the issue of
> the warrant as to justify a finding of probable cause at that time. . . . However, the
> mere lapse of substantial amounts of time is not controlling in a question of
> staleness.  We evaluate staleness in light of the particular facts of the case and the
> nature of the criminal activity and property sought.  The information offered in
> support of the application for a search warrant is not stale if there is sufficient
> basis to believe, based on a continuing pattern or other good reasons, that the
> items to be seized are still on the premises.

United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997) (internal quotations and citations

omitted), cert. denied, 523 U.S. 1101 (1998).  The court may infer that "equipment acquired to

accomplish a crime will be kept for some period of time."  United States v. Hernandez, 80 F.3d

1253, 1259 (9th Cir. 1996) (noting that for drug trafficking, probable cause may continue for

several weeks, if not months, from the last reported instance of suspect activity).  "[A]n issuing

magistrate may draw reasonable inferences about where evidence is likely to be kept, based on

the nature of the evidence and the type of offense alleged. . . . [A] magistrate may rely on the

conclusions of experienced law enforcement officers regarding where evidence of a crime is

likely to be found."  United States v. Fernandez, 388 F.3d 1199, 1253 (9th Cir. 2004) (internal

quotation omitted), cert. denied, 544 U.S. 1043, modified on other grounds, 425 F.3d 1248

(2005).  "[O]nly a reasonable nexus between the activities supporting probable cause and the

locations to be searched" is required.  Id. 388 F.3d at 1254.

In the affidavit, Goodwin states that she has training in crimes committed with firearms

and crimes committed by felons.  She adds:

> I know from training and experience that firearms and firearms accessories
> are valuable commodities and are often kept for long periods of time.  I know
> from my training and experience that it is common practice among persons who
> illegally possess and/or illegally use firearms, to secrete firearms accessories
> within their residences.  I know that it is common for persons to place firearms in
> vehicles as a means for what they consider protection.

Page 11 - OPINION AND ORDER

I know from my training and experience that individuals often keep items of evidentiary value in out buildings and unattached garages and other curtilage.

I also know that it is common for persons involved in criminal activity to keep items of evidence in their vehicles so that they are readily accessible and so that they may be concealed from law enforcement in the event of a search warrant on their residence.

I know from my training and experience that persons who unlawfully possess firearms will often allow other persons to drive their vehicles when they carry firearms on their person. Oftentimes in these circumstances involving persons engaged in unlawful activities, traveling in groups of two or more, the person who carries the firearm will travel as a passenger in vehicles to allow for fast escape. Especially in circumstances where there is a strong possibility that law enforcement would be looking to stop their vehicle.

Def. Ex. A at 6.

The warrant links Walker with the Avalanche through Robinson's description of the suspect, DMV records for the Avalanche, the description of Walker in his criminal history records, and Stradley's description of Walker from the later traffic stop. I agree there is no evidence that the shooting is part of an ongoing criminal enterprise, like a drug conspiracy. The affidavit, however, provides evidence that firearms tend to be kept for long periods of time and, when illegally owned, may be hidden in homes and kept in vehicles. The magistrate is entitled to rely on these statements. Taken together with the links between Walker and the Avalanche, there is a reasonable nexus between the activities supporting probable cause and Walker's home and all of his cars. The 32-day delay does not make the information stale based on Goodwin's statement that firearms tend to be kept for long periods of time. I conclude that the evidence should not be suppressed on the basis of staleness of the warrant's information.

**CONCLUSION**

Defendant's Motion to Suppress and Motion for *Franks* Hearing (#14) is denied.

IT IS SO ORDERED.

Dated this _____ 26th _____ day of July, 2007.

Garr M. King
United States District Judge